The appellate court is reconvened. You may be seated. This is our third case of the Morning First Financial v. OSF Healthcare for the appellant, Mr. Genske, and for the appellee, Mr. Vaughan. You may proceed. This is probably the easiest appellate decision this court will ever have to face, because there's only one answer. This case has to be returned to the trial court. The law of the case mandates that decision. The appellate court in the first decision was very, very clear that the institutional negligence count has to go to the jury. On retrial, the trial judge essentially doubled down on his bet, and by that I mean this. There are three allegations with respect to the corporate negligence, institutional negligence count against OSF. Item A, that it had a policy wherein its primary healthcare patients who did not have appointments were farmed out to prompt care. But prompt care had a policy restricting positions in prompt care from providing longitudinal care. And there was also a prohibition of the prompt care physicians having access to all of the charting that existed within the primary care clinic of OSF. In that first case, the plaintiff also made the allegation that those policies effectively violated state law, specifically the Illinois Hospital Licensing Act to be found at 210 ILCS, Chapter 85, Section 8, excuse me, 10.8. The appellate court, I should back up, the trial court in the initial trial, granted summary judgment the first day of the trial with respect to the statutory violation allegation that the plaintiff had made, specifically the violation of the Illinois Hospital Licensing Act. So in the first case, the trial court did not grant summary judgment with respect to the other allegations of institutional negligence. Yet in its opinion, the appellate court clearly said that if you take the prohibition of longitudinal care that is imposed on these prompt care, these urgent care physicians, and you couple that with the fact that those physicians are not given access to all of the medical records that OSF as an institution has, those factors, in connection with the allegations or the plain wording of the statute, might be enough for the jury to decide that that statute had been violated, and therefore summary judgment was wrongfully granted. In the retrial, the trial judge ignored the mandate of the appellate court with respect to the Hospital Licensing Act, but then, as I say, doubled down and granted summary judgment with respect to the other allegations, the prohibition of longitudinal care, the prohibition of sharing medical records with prompt care physicians, and granted summary judgment with respect to the entirety of the institutional negligence theories of the plaintiff. And it's curious that that would be done on the basis that the testimony of Plaintiff's Institutional Negligence F3 expert, Dr. Chabon, had been stricken in its entirety, because the jury instruction, specifically IPI 105.03.01, states that in an institutional negligence count, expert testimony is not even needed. The Illinois Supreme Court has so stated in its Stutt case, which is cited in the plaintiff's briefing, and the strongest language with respect to that specific point, that for institutional negligence, plaintiff doesn't even need expert testimony. It comes from a treatise authored by Justice Steigman of this court. So, unless there are any questions, as I say, this is an easy case for the court. There's only one resolution that's proper under the law. The trial court judge refused to follow the appellate mandate, broaden his prohibition or his summary judgment ruling, despite the fact that expert witness testimony is not even needed. So, the only path for this court to take is to reverse Judge Lawrence yet again, and remand this case back to McLean County for trial on the institutional negligence count. The plaintiff would invite the court to rule that the testimony of plaintiffs as three expert on institutional negligence, should not have been stripped, because the semantics of an expressed opinion is a matter of weight for the jury, not a matter of law for the trial judge. Counsel, on the proximate cause issue regarding Dr. Chabon, wasn't his statement when asked, how did that affect the outcome in Rivera's case, wasn't it, it's hard to be certain, but one would hope that had there been better communication, better attitude and better sharing of records, that he could have been diagnosed earlier and treated earlier. Is that enough? It is. Why is that enough? Because that seems to fall even short of saying it was a possibility or a probability. What I harken back to is quite a number of years ago, deposing an orthopedic surgeon in Bloomington by the name of Tony Dussman, and we got to the question that invariably we get to, a doctor, do we have a reasonable degree of medical certainty as to whether or not a motivational accident related to the patient's history, might or could have caused the injuries for which he treated the patient. And I can remember Tony Dussman just going to the hospital and saying, why do you attorneys play these games with these words? Why do you phrase it like that? In his opinion, the accident clearly caused the fracture for which he treated the patient. We paused in the deposition and I tried to explain, we have to use that wording because of the rulings of the court. Because in years past, when a question was posed, do you have an opinion, based on reasonable degree, that this accident did cause these injuries. Objection, invasion of the province of the jury. Objection, sustained. That's how we've gotten there. So necessarily, now, we have relatively obtuse wording with respect to causation opinions, because the objection that the question has posed, invited the expert witness to invade the province of the jury, was historically sustained. That's why we ended up in this position. But, but, Plaintiff does not have to rely, Your Honor, exclusively on the testimony of Robert Chabon for proximal cause. Plaintiff had retained a pediatric oncologist from New York, who had been deposed, who had stated unequivocally, this type of a tumor, ALL, acute lymphoblastic lymphoma, if addressed in a timely fashion, results in a cure over 90% of the time. These kids live to adulthood and live a full life. You don't have to confine, the jury doesn't have to confine its decision when making the decision on proximal cause, exclusively to the testimony of Robert Chabon. But Dr. Chabon does say, unequivocally, that there was a complete breakdown in communication. This was a failure to connect the dots. He does believe that it was bad medicine, and that it would be his belief that it would have been a timely, had it been timely addressed, it would have been solved. But you can't just take that question in a vacuum, which the defense did, and which the trial court did, and ignore all the other testimony in the case on proximal cause. Any other questions?  Thank you, Counsel. Thank you very much. Thank you, Your Honor, and may it please the Court and Counsel, my name is Adam Vaught, and I represent OSL Healthcare System. The threshold question in this case is whether or not the trial court abused its discretion in striking Dr. Chabon's expert opinion on causation. Dr. Chabon was presented as Plaintiff's expert for Plaintiff's Institutional Negligence Theories. Those Institutional Negligence Theories were in three parts, but were two general categories dealing with records sharing and longitudinal care. Dr. Chabon gave the opinion that Justice Turner did read, but I'd like to read again, because this is sort of where the case turns, I believe. It's a question by Counsel. Do you have an opinion as to whether or not these corporate policies we've been discussing, proximally caused or contributed to Christian Rivera's death? Answer, I think it's a bad idea to have barriers to communication in any situation that involves the care of a patient, and it's not just specifically a barrier, but it's an attitude of, you know, we don't share records, we don't communicate well across the organization, and I think that's all contributory to bad medical care. The question, how did that affect the outcome in Christian Rivera's case? Answer, it's hard to be certain, but one would hope, had there been better communication, better attitude, better sharing of records, that he could have been diagnosed earlier and treated earlier. As Counsel stated, he believes that this is a failure to diagnose case, but that opinion does not state what would have happened had the policies not have been in place that Dr. Chabon was critical of. In order to establish that there was causation in a medical negligence case, there has to be expert testimony. Counsel has stated that you don't need expert testimony in a direct negligence case, but the cases cited, and including Justice Stegman's treatise, says that that goes to standard of care. We're not talking about standard of care here in this case, we're talking about proximate cause, and under proximate cause, the opinion has to be given to a reasonable degree of medical certainty. The trial court looked at it and determined that this opinion, the standing alone, was so vague and uncertain that the trial court didn't know what it meant. It certainly doesn't rise to a degree of medical certainty. Just about any lay person can give an opinion that had there been better communication, bad things wouldn't happen. It doesn't require a doctor to state that. It doesn't require an expert to state that. An expert needs to state that had the policies not been in place, that based on their review of records, their review of the evidence in the case, that they can state with a reasonable degree of medical certainty a different outcome would have arose. That gets to the additional part of the expert deposition, the evidence deposition of the expert, was that throughout on cross-examination, Dr. Chabon admitted that he had not reviewed the medical records that were at issue in this case. He said that numerous times that he hadn't reviewed the records, so he is unable to say what record that would have been seen that would have changed the treatment that was given to Kristen Rivera. Without being able to know what the records are at issue in this case, he can't state that the outcome would have been any different. He just cannot establish causation. Even if this opinion rose to a reasonable degree of medical certainty, he doesn't have the foundation to present it because he doesn't know what is in the records that would have led to a different outcome. So, based on the review of the deposition, and this is the evidence deposition within it, the doctor said he was unable to come to Bloomington for trial. This was the only thing that was going to go to the jury. So the trial court was correct in finding this wasn't an opinion that rose to a reasonable degree of medical certainty and was correct to strike it. By striking it, then that left a void in Plaintiff's institutional negligence claims, which is that there was no expert to provide any causation theory, and this causation is an element of these claims. The trial court was correct to grant judgment in the favor. What about Mr. Zyginski's assertion that that's not required? An expert is not required in an institutional negligence claim? In the cases that he cites, it does state that an expert is not required, but that's on standard of care. On the element of proximate cause, the Supreme Court has said that in medical negligence cases, you have to have an expert state to a reasonable degree of medical certainty what their causation is. Medical negligence or institutional negligence? Well, I believe that with institutional... That doesn't matter? That doesn't matter. An expert has to tell the jury that here is the cause of the injury, and without that, the jury can infer from other testimony, other evidence, what a standard of care may or may not be, but they can't determine what the causation is, because if you're dealing with whether a hospital's policies created or caused an injury, or you're dealing with a medical negligence that's caused an injury, there has to be somebody who can inform the jury that this is the reason that it's caused. It can't just be evidence inferred. So, without that causation evidence, there is no case to go forward, so the court was correct to grant judgment to OSF on those claims. I would like to address the law of the case argument. In the prior appeal, again, dealing with standard of care versus proximate cause, in the prior appeal, the court ruled that reverse the summary judgment order first on the first round that the court found was untimely, because summary judgment was filed on the eve of trial, and said plaintiff did not have the opportunity to respond, and so because of the timeliness issue, the court reversed. Then, the court did say that it found that a jury could infer from the statute that there could have been an interference with the doctor's ability to determine care. However, on remand, the court did not strike, did not grant summary judgment on standard of care. It granted it on proximate cause. In fact, under the law of the case, if the appellate court has to deal with the same law and the same facts, here, Dr. Chabon's testimony, he wasn't even retained as an expert until they went back on remand. And his evidence deposition wasn't given until almost two years after the appellate court had issued its opinion. So, there's no way to say that these are the same facts that were before the court prior. And it is not the same law, because again, we're dealing with the issue of standard of care versus proximate cause. In our brief, we do also argue that the court were to find that law of the case does bind on the summary judgment issue that the court could use the palpably erroneous exception, because the appellate court in the prior opinion, in order to reach the summary judgment issue, found that there is a bright line rule that experts cannot be cross-examined about their expert earnings for more than two years prior to the trial. The appellate court relied on the trial opinion from the Supreme Court. However, in doing so, the appellate court was concerned with the harassment and invasion of privacy to experts, whereas in Trower, the Supreme Court was concerned with the rise of professional experts who have become very good at withstanding cross-examination. So, the court wanted to give counsel on both sides tools to probe for the bias that an expert may have. And it did say in Trower that two years was reasonable, but that was because based on the case, that seemed to be all the earnings that the expert had. It doesn't state that precisely, but I believe the Supreme Court's opinion came out in early 88, and the appellate court's opinion came out in late 86 in the trial. The expert was asked earnings to 1983 when he started as an expert, so it seems that the trial probably fell within two years after he started. So, because the threshold question is that the court did not abuse its discretion to conduct the evidence re-deposition, without that deposition, there was no case to go forward. The trial court was correct, and we ask that it should be affirmed. Would you agree that the deposition is damning, if you only look at it? The deposition, that is. Damning as to? Well, he said this is bad medical practice, and the delay, it was bad. The failure of communication led to delayed diagnosis. Well, I believe, I mean, that goes to the standard of care. I believe he's giving an opinion that these policies shouldn't be in place, and that it's bad medicine to not share records as he believes they should have been shared, although, again, he doesn't know what's in those records. And we didn't challenge it on the standard of care issue. We challenged it on proximate cause alone. So he was presented as both standard of care and proximate cause as to standard of care, and we didn't challenge that. That's not what the trial court did either. Was there any other evidence that could have established proximate cause? Or is it your position that only the expert testimony was there? That was our position. And also, it has not been raised, and Plankton's brief, that there is other evidence. Was it raised at the trial court that there is other evidence? It seemed like, once the court made its ruling, a 304A finding was requested, and there was no other argument. There is also the vicarious liability theory that's still going to go forward in this case. And so there's evidence on medical negligence as to causation, which I believe was alluded to about if you had detected earlier, perhaps that could have resulted in a different outcome. But that's as to what the doctor was doing specifically, not what the institution's policies were causing. So as to the institution on proximate cause, no, there was no other expert evidence. No further questions? No further questions. Thank you. Thank you, Your Honor, and we ask that you affirm. Rebuttal, Mr. Hicks. Yes, sir. With respect to whether or not we established a two-year bright-line rule, that's simply not the case. I'm quoting from paragraph 18 of the prior decision. We recognize that the trial court has discretion to oversee the trial process, and that it must have some leeway to reasonably extend the bounds of this type of cross-examination should the individual facts of the case so require. That was the specific wording of the opinion of the appellate court. With respect to this issue of institutional negligence, and again, I'm quoting from the first opinion of the appellate court, paragraph 31 specifically. After reviewing the record, we find that OSF failed to show it was entitled to a summary judgment on paragraph C as a matter of law. We found, however, that OSF's policy restricting prompt care physicians from providing longitudinal care unnecessarily interfered with prompt care physicians' exercise of independent clinical judgment in diagnosing and treating patients in violation of section 10.8 of the Act, where that policy, taken together with OSF's practice of authorizing OSF medical group personnel to reroute primary care patients and prevent prompt care physicians from accessing the primary care records and providing continuity of care. With reference to the opinions of Dr. Chabon, and whether it's his testimony and his testimony alone that bears on the issue of proximate cause with respect to institutional negligence, what's being ignored is the fact that a plaintiff deposed both the CEO of OSF and Dr. Lamont Tyler, the medical director of prompt care, both of whom affirmed under oath in their depositions that they do have these policies of not sharing records, that they do have these policies of restricting longitudinal care. Those depositions were provided to Dr. Chabon and he specifically addressed them in his testimony. So it's not simply Dr. Chabon's testimony, it's not necessarily the fulcrum with respect to proximate cause on the institutional negligence count, and I disagree respectfully with counsel. I'm aware of no case in the state of Illinois that says in an institutional negligence case proximate cause has to be addressed with medical, expert medical testimony. In fact, if you read the IPI 105.13 1, cited in Plano's brief, the jury instructions specifically say otherwise, that you can rely on statutes, on policies, in order to make that case. With reference to Dr. Chabon's testimony, had he said, and he  this because he wouldn't have the basis to say it, but had he said counsel, I'm here to tell you that because of these barriers in communication, that's the reason for this child's death. Had there not been those barriers to communication, there would have been timely treatment, there would have been a cure. How in the world would he say that when he's not a pediatric oncologist? He can't say that. You're not going to say that. So, under the context of the theory that's being raised by the defense, and this is a little bit unusual, if I may approach, Your Honor. Yes. Dr. Chabon's testimony is obviously part of the record on appeal, and part of that testimony included in exhibit 19, which is a spreadsheet that  records with respect to this child, which came up in his deposition, and although he doesn't have and didn't study the medical records themselves, he was specifically asked about two entries on this exhibit 19. If the court will look at item number 2, entry for the date of November 25, 2002, the child's lymphadenopathy is noted. The child returns in January, specifically January 12, 2003, positive notes. He still got the positive cervical lymphadenopathy. And what Dr. Chabon said is the first notice of the lymphadenopathy in December of 2002 is at the primary care clinic. But when the child returns in January, the prompt care physician isn't going to know that because he doesn't have access to those records. That example was specifically given by Dr. Chabon in his testimony. Thank you.